UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Blackwater Technologies, Inc.,
a Nevada Corporation,
                    Plaintiff,

                                                        **MEMORANDUM OPINION**
          v.                                            **AND ORDER**
                                                        Civ. No. 06-1273 ADM/AJB
Synesi Group, Inc., f/k/a Portogo, Inc.,
a Minnesota Corporation; Tim Olish;
and Rod Miley,

                    Defendants.

_____

Boris Parker, Esq., Bassford Remele, P.A., Minneapolis, MN, argued on behalf of Plaintiff.

Robert Zeglovitch, Esq., Law Offices of Robert Zeglovitch, Minneapolis, MN, argued on behalf of Defendants Tim Olish and Rod Miley.

_____

## I. INTRODUCTION

On October 31, 2007, the undersigned United States District Judge heard oral argument on Defendants Tim Olish ("Olish") and Rod Miley's ("Miley") (the "Individual Defendants") Motion for Judgment on the Pleadings [Docket No. 51]. In its Amended Complaint [Docket No. 30], Plaintiff Blackwater Technologies, Inc. ("Blackwater") asserts claims of breach of contract, promissory estoppel, deceptive trade practices, unfair competition, fraud, and negligent misrepresentation. For the reasons set forth below, the Individual Defendants' Motion for Judgment on the Pleadings is granted in part and denied in part.

## II. BACKGROUND[1]

Blackwater is a Nevada corporation with its principal place of business in Richmond, California.  Am. Compl. ¶ 1.  Blackwater has filed this lawsuit as the successor in interest to Tiger Team Technologies, Inc. ("T3"), also a Nevada Corporation.  Id.  Defendant Synesi Group, Inc. ("Synesi"), was a Minnesota corporation with its principal place of business in Bloomington, Minnesota.  Indiv. Defs.' Answer [Docket No. 38] ¶ 6.  Synesi was once known as Portogo, Inc. ("Portogo").  Am. Compl. ¶ 2; Indiv. Defs.' Answer ¶ 6.  The Court hereinafter refers only to Synesi.  Miley is a Minnesota resident and was the chief executive officer ("CEO") of Synesi.  Am. Compl. ¶ 4; Indiv. Defs.' Answer ¶ 2.  Olish is a Minnesota resident and was the president of Synesi.  Am. Compl. ¶ 5; Indiv. Defs.' Answer ¶ 2.

In early June 2004, Paul Hogan ("Hogan"), then the president of T3, met with Miley, then the CEO of Synesi, and Olish, then the president of Synesi, to discuss the potential engagement of Hogan as a consultant to Synesi.  Am. Compl. ¶ 9; Indiv. Defs.' Answer ¶ 7.  During a meeting the following week, Olish informed Hogan that Synesi would not hire Hogan to work as a consultant.  Am. Compl. ¶ 10.  However, Hogan, Olish, and Miley continued to discuss Hogan's involvement with Synesi, including the possibility that Hogan could license Synesi's "patented" electronic medical records transmission technology.  Id. ¶ 11.

In mid-July 2004, Hogan developed a business plan for T3 to engage in medical transcription, network certification, electronic transmission of medical records, and sales of

---

[1] A motion for judgment on the pleadings is analyzed under the same standard as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).  Westcott v. Omaha, 901 F.2d 1486, 1488 (8th Cir. 1990).  In considering a motion to dismiss, the pleadings are construed in the light most favorable to the nonmoving party, and the facts alleged in the complaint must be taken as true.  Hamm v. Groose, 15 F.3d 110, 112 (8th Cir. 1994).

Synesi's services as a licensee of Synesi's "patented transmission technology." Id. ¶ 12. Unbeknownst to Hogan, Synesi did not hold a patent for its technology, but had merely applied for a patent. Id. ¶ 12.

In late July and early August 2004, Hogan, on behalf of T3, met four times with Olish of Synesi. Id. ¶ 13. Blackwater alleges that "[a]s a result of those meetings it was agreed that T3 would be granted the worldwide exclusive license for medical field applications of Synesi's allegedly patented processes." Id. ¶ 13. In September 2004, discussions continued regarding a formal licensing agreement. Id. ¶ 14. At the same time, T3 prepared marketing materials for a public offering of its stock. Id. ¶ 15. T3 provided Synesi with a copy of the marketing materials, which referred to Synesi's technology. Id. ¶ 15.

Blackwater alleges that "[b]y October 15, 2004, Synesi and T3 had agreed that T3 would be granted the exclusive license for use of the Synesi process patent in the medical field and, in exchange, Synesi was granted the right to use T3's developed proprietary medical transcription services." Id. ¶ 16. Hogan pressed "for th[e licensing] agreement to be put into a formal written document; Miley agreed and asked Olish to do so." Id. ¶ 19. The result was an October 15, 2004, email from Olish to Hogan with the subject "T3-Draft Confidential." Id. Ex. A.[2] The email begins with a disclaimer in bold letters that "[t]his is a confidential draft and is not for use by any party for any reason. It cannot be copied or distributed." Id. Ex. A. The email states in part:

> This is a follow up to our recent discussions regarding T3 and its strategic relationship

---

[2] The Court may consider the October 15, 2004, email because it is attached to the Amended Complaint. Fed. R. Civ. P. 10(c) (stating "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes").

> with [Synesi].  It is our intent to use the medical transcription services developed by T3 as part of the first commercial offering utilizing the process patent held by [Synesi] for securing and bonding specific internet transmissions.  The assumption here is that both T3 and [Synesi] will be market ready by mid March 2005.

Id. Ex. A.  The email proceeds to discuss outstanding issues with insurance partners.  Id. Ex. A.  The email contemplates that Synesi would

> have to go through a complete POC (Proof of Concept) for the process patent to satisfy the underwriting requirements of the insurance partners.  As stated previously we intend to use T3 as part of the POC and therefore positioning T3 to claim "first to market" in the transcription space when the fully commercialized offering is available in mid March 2005.

Id. Ex. A.  The email concludes with a statement that "[a]ll of the issues mentioned need to be finalized prior to a licensing agreement being completed."  Id. Ex. A.

Relying on the October agreement with Synesi, T3 obtained $6,000,000 from Seaside, PLC, to fund the issuance of T3's capital stock.  Id. ¶ 17.  Seaside estimated that T3 would have a market capitalization value of $50,000,000 based in large part on T3's exclusive license of Synesi's allegedly patented technology limited to the medical field.  Id. ¶ 17.

In the second week of January 2005, Miley notified T3 that the relationship between T3 and Synesi would cease immediately and Synesi would no longer communicate with T3. Id. ¶ 20.  As a result, T3's stock offering was withdrawn and the estimated value of T3's shares decreased from $50,000,000 to $450,000.  Id. ¶ 21.

On July 26, 2005, the United States Patent and Trademark Office issued Patent No. 6,922,720 ("the '720 Patent"), entitled "Systems and Methods for Insuring Data Over the Internet."  Portogo, Synesi's predecessor, was listed as the assignee of the Patent.  '720 Patent.  On September 23, 2005, Synesi filed a lawsuit, Civ. No. 05-2205 ADM/AJB, in this Court against T3 and Hogan, alleging that T3's Auditrac product infringed the '720 Patent.  Synesi's

Compl. [Docket No. 1, Civ. No. 05-2205]. Synesi also asserted claims for breach of a non-disclosure agreement, false advertising under the Lanham Act, deceptive trade practices under Minn. Stat. § 325D.44, and unfair competition. Id.

On March 31, 2006, Blackwater, as successor in interest to T3, filed the instant litigation against Synesi. Complaint [Docket No. 1]. In October 2006, TranSurety, LLC ("TranSurety"), foreclosed on a security interest it held in Synesi's patents. Am. Compl. ¶ 22. In February 2007, Synesi's counsel withdrew its representation of Synesi in both Civ. No. 05-2205 and the instant action because Synesi was effectively out of business and lacked financial resources to pursue its claims against Blackwater or defend itself against Blackwater's claims. Davenport Aff. [Docket No. 19].

On April 18, 2007, this Court dismissed Synesi's action against Blackwater for failure to prosecute [Docket No. 71, Civ. No. 05-2205]. On April 27, 2007, this Court granted Blackwater leave to file an Amended Complaint in the instant action naming Olish and Miley as additional defendants [Docket No. 31]. Blackwater asserts claims against Synesi for breach of contract; promissory estoppel; violation of the Minnesota Deceptive Trade Practices Act ("MDTPA"), Minn. Stat. § 325D.44; unfair competition; fraud; and negligent misrepresentation.[3] Blackwater alleges Olish and Miley are individually liable on these claims because they "used Synesi's corporate form to perpetrate a fraud upon Mr. Hogan and T3." Am. Compl. ¶ 50.

---

[3] Blackwater has voluntarily dismissed its claims against TranSurety. Pl.'s Notice of Dismissal Without Prejudice [Docket No. 43].

## III. DISCUSSION

**A.     Standard of Review**

Rule 12(c) of the Federal Rules of Civil Procedure provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." A motion for judgment on the pleadings is analyzed under the same standard as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). Westcott, 901 F.2d at 1488. In considering a motion to dismiss, the pleadings are construed in the light most favorable to the nonmoving party, and the facts alleged in the complaint must be taken as true. Hamm, 15 F.3d at 112; Ossman v. Diana Corp., 825 F. Supp. 870, 879-80 (D. Minn. 1993). Any ambiguities concerning the sufficiency of the claims must be resolved in favor of the nonmoving party. Ossman, 825 F. Supp. at 880. "A motion to dismiss should be granted as a practical matter . . . only in the unusual case in which the plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief." Frey v. City of Herculaneum, 44 F.3d 667, 671 (8th Cir. 1995).

Under Rule 8(a) of the Federal Rules of Civil Procedure, pleadings "shall contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." A pleading must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007). Under Rule 9(b) of the Federal Rules of Civil Procedure, a party alleging "fraud or mistake . . . must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."

6

**B.      Blackwater's Claims Against the Individual Defendants**

   **1.      Fraud**

Count Five of the Amended Complaint asserts a claim of common law fraud by misrepresentation. Am. Compl. ¶¶ 41-44. In Minnesota, the elements of a claim of fraudulent misrepresentation are:

   (1)   there was a false representation by a party of a past or existing material fact susceptible of knowledge;

   (2)   the representation was made with knowledge of the falsity of the representation or made as of the party's own knowledge without knowing whether it was true or false;

   (3)   the representation was made with the intention to induce another to act in reliance thereon;

   (4)   the representation caused the other party to act in reliance thereon; and

   (5)   the party suffered pecuniary damage as a result of the reliance.

Hoyt Props., Inc. v. Prod. Res. Group, L.L.C., 736 N.W.2d 313, 318 (Minn. 2007).

In particular, Blackwater alleges that "[d]espite the fact that they knew no patent had yet been granted, Messrs. Olish and Miley repeatedly assured Mr. Hogan that the Synesi technology was fully patented and that Blackwater/T3 would be granted a license to sell it." Am. Compl. ¶ 42. Blackwater claims it acted in reliance on these alleged misrepresentations when it created a business plan, entered into a funding agreement with Seaside PLC, and when it made preliminary arrangements for a securities offering of T3's stock. Id. ¶ 43.

In response, the Individual Defendants argue that Blackwater has failed to state a fraudulent misrepresentation claim because it could not have reasonably relied on either of the alleged misrepresentations. Whether reliance is reasonable ordinarily is a question of fact for the

jury. Nicollet Restoration v. City of St. Paul, 533 N.W.2d 845, 848 (Minn. 1995). However, courts can decide the issue as a matter of law if there are no facts that would support a conclusion that reliance was reasonable. Id. Regarding the alleged misrepresentation of the status of the patent, the Court finds as a matter of law that Blackwater could not have reasonably relied on the alleged statement because Olish's October 15, 2004, email should have put Blackwater on notice that a formal patent had not yet issued. The email states that "[a]ll of the potential insurance partners have been aware of the *pending* PORTOGO process patent since early 2002 but formal conversations were delayed until we received notice of allowance for the claims made in the patent. This happened in mid August this year." Am. Compl. Ex. A (emphasis added). On these facts, Blackwater could not have acted in reasonable reliance on assurances that Synesi's technology was "fully patented." Therefore, the alleged misrepresentation regarding the status of Synesi's patent can not support Blackwater's fraud claim.

The second misrepresentation alleged in the Amended Complaint is that Olish and Miley assured Hogan that Blackwater would be granted a license to sell Synesi's technology. Am. Compl. ¶ 42. The Amended Complaint alleges that

> By October 15, 2004, Synesi and T3 had agreed that T3 would be granted the exclusive license for use of the Synesi process patent in the medical field and, in exchange, Synesi was granted the right to use T3's developed proprietary medical transcription services. Specifically, Olish, agreed that Synesi would use T3 and its technology as part of its proof of concept. (See [Olish's October 15, 2004, email].)
>
> In reliance upon its October agreement with Synesi, T3 entered into an agreement with Seaside, PLC for $6,000,000 in funding of the issuance of the capital stock of T3 . . . .

Id. ¶¶ 16-17. The Individual Defendants argue that as a matter of law Blackwater could not have reasonably relied on the October 15, 2004, email because it states that "[t]his is a confidential

draft and is not for use by any party for any reason," and that certain issues "need to be finalized prior to a licensing agreement being completed." Id. Ex. A. In response, Blackwater argues it relied on an oral licensing agreement that it had reached with Synesi by October 15, 2004. See Id. ¶¶ 15, 19.

The Court finds that Blackwater's fraud claim satisfies the lenient notice pleading standard of Rule 8(a). Further, Blackwater has sufficiently alleged the "who, what, where, when, and how" of the fraud, as required by Rule 9(b). United States ex rel. Costner v. URS Consultants, Inc., 317 F.3d 883, 888 (8th Cir. 2003). Although it is unlikely that Blackwater could have reasonably relied on the October 15, 2004, email, a decision as to whether Blackwater can prove reasonable reliance on a prior oral agreement is premature at this early stage of the litigation.

### 2. Whether the Amended Complaint Adequately States a Claim to Pierce the Corporate Veil

Blackwater's Amended Complaint asserts that the Individual Defendants are liable to the same extent Synesi is because they "used Synesi's corporate form to perpetrate a fraud upon Mr. Hogan and T3." Am. Compl. ¶ 50. The Individual Defendants concede "that officers of a corporation are personally liable to third parties for their own fraudulent activities in relation to third parties." Indiv. Defs.' Mem. in Supp. of Rule 12(c) Mot. at 9-10. However, the Individual Defendants argue that Blackwater's Amended Complaint does not set forth a basis for holding them liable for Blackwater's non-fraud claims. Therefore, the Individual Defendants seek judgment on Blackwater's claims for breach of contract, promissory estoppel, deceptive trade practices under Minn. Stat. § 325D.44, unfair competition, and negligent misrepresentation.

However, under the liberal notice pleading standard of the Federal Rules of Civil

Procedure, the Amended Complaint adequately puts the Individual Defendants on notice that Blackwater seeks to pierce the corporate veil. Therefore, the Court proceeds to analyze whether Blackwater has sufficiently pleaded its non-fraud claims.

### 3. Breach of Contract

Count One of the Amended Complaint asserts a claim for breach of contract. The Individual Defendants argue this claim should be dismissed because the disclaimers in the October 15, 2004, email show that the alleged oral agreement was merely an agreement to agree, which is unenforceable under Minnesota law. See Lindgren v. Clearwater Nat'l Corp., 517 N.W.2d 574 (Minn. 1994). However, the October 15, 2004, email does not conclusively preclude the possibility that Blackwater and Synesi reached an enforceable oral agreement. The Individual Defendants' argument that any oral agreement was an agreement to negotiate is more appropriate in support of a motion for summary judgment after the facts are developed through discovery.

### 4. Promissory Estoppel

Count Two of the Amended Complaint asserts a claim of promissory estoppel. "Promissory estoppel will be found where a party makes a promise knowing another party reasonably relies and acts upon that promise, and the promise must be enforced to avoid injustice." Norwest Bank Minn., N.A. v. Midwestern Mach. Co., 481 N.W.2d 875, 880 (Minn. Ct. App. 1992). The Individual Defendants argue Olish's October 15, 2004, email does not contain a clear and definite promise. The Individual Defendants also argue that Blackwater could not have reasonably relied on the October 15, 2004, email because of its conditional language. However, these arguments overlook Blackwater's allegation that it relied on an oral

10

agreement. Blackwater has adequately stated a claim of promissory estoppel under the liberal notice pleading standard of Rule 8(a).

        **5.**        **Minnesota Deceptive Trade Practices Act**

A person violates the MDTPA when, in the course of business, the person causes a likelihood of confusion or misunderstanding as to the source, affiliation, or characteristics of goods or services of another person. Minn. Stat. § 325D.44, subd. 1. Count Three of the Amended Complaint alleges, upon information and belief, that Synesi violated the MDTPA by making statements similar to the allegation in Synesi's Complaint in Civ. No. 05-2205 that Blackwater infringed the '720 Patent. Am. Compl. ¶ 31. Blackwater asserts that Synesi's alleged statements created a likelihood of confusion regarding the origin, source, characteristics and design of Blackwater's Auditrac product. Id. ¶ 35. Therefore, Blackwater seeks injunctive relief under Minn. Stat. § 325D.45, subd. 1, which provides that "[a] person likely to be damaged by a deceptive trade practice of another may be granted an injunction against it under the principles of equity and on terms that the court considers reasonable."

The Individual Defendants argue that statements made in a lawsuit cannot form the basis of a MDTPA claim. The Minnesota courts have not addressed the issue. However, the Court finds that resolution of this issue is unnecessary because Blackwater's MDTPA claim fails for a more basic reason. To obtain injunctive relief under Minn. Stat. § 325D.45, Blackwater must show that it is likely to be damaged in the future by Synesi's deceptive trade practices in the course of business. The Amended Complaint alleges that Synesi transferred the '720 Patent to TranSurety in October 2006, and that "Synesi has no remaining assets or business operation whatsoever." Am. Compl. ¶ 23. Because Synesi no longer operates as a business and no longer

11

has the rights to the '720 Patent, Blackwater cannot demonstrate it is likely to be damaged in the future by Synesi's allegations of patent infringement. Therefore, Count Three of the Amended Complaint is dismissed as to the Individual Defendants.

### 6. Unfair Competition

Count Four of the Amended Complaint asserts that Synesi's allegations of patent infringement amount to unfair competition. Blackwater again seeks injunctive relief. As with the MDTPA claim, this claim must be dismissed as to the Individual Defendants because Blackwater cannot demonstrate that Synesi, which is no longer in business, is likely to engage in future conduct that harms Blackwater.

### 7. Negligent Misrepresentation

Count Six of the Amended Complaint asserts a claim of negligent misrepresentation. In Bonhiver v. Graff, 248 N.W.2d 291, 298-99 (Minn. 1976), the Minnesota Supreme Court adopted the definition of negligent misrepresentation set forth in the Restatement (Second) of Torts § 552:

> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

Blackwater alleges that "Messrs. Olish and Miley, while in the course of their transaction with Mr. Hogan and T3, failed to exercise reasonable care in communicating information about the status of Synesi's patent." Am. Compl. ¶ 46. However, as discussed above, Blackwater could not have reasonably relied on representations that Synesi's technology was "fully patented" because Olish's October 15, 2004, email specifically refers to the "*pending* PORTOGO process

patent." Id. Ex. A (emphasis added).  Therefore, Count Six of the Amended Complaint is dismissed as to the Individual Defendants.

**C.**     **Whether Blackwater has Established it is the Real Party in Interest**

The Individual Defendants request that if their Motion for Judgment on the Pleadings is not granted in full, then this Court should consider their objection, stated in their brief, that Blackwater has failed to establish that it is the real party in interest, as required by Federal Rule of Civil Procedure 17.  See Indiv. Defs.' Mem. in Supp. of Rule 12(c) Mot. at 25.  The Individual Defendants argue that Blackwater's conclusory assertion that it is T3's "successor in interest" is insufficient to satisfy Rule 17.  This Court agrees.  Therefore, Blackwater will be ordered to file evidentiary documentation that it is the real party in interest in this action.

## IV. CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendants Tim Olish and Rod Miley's Motion for Judgment on the Pleadings [Docket No. 51] is **GRANTED IN PART AND DENIED IN PART**;

2. Counts Three, Four, and Six of the Amended Complaint are **DISMISSED AS TO DEFENDANTS TIM OLISH AND ROD MILEY**; and

3. By February 4, 2008, Plaintiff Blackwater Technologies, Inc., must file materials demonstrating that it is the real party in interest in this action.

BY THE COURT:

s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated: January 14, 2008.